Mary T. Duffy, Appellant, v. Fort Dearborn Casualty Underwriters, Otherwise Known as Fort Dearborn Casualty Underwriters of Chicago, Appellee.

Gen. No. 36,028.

Opinion filed March 29, 1933.

NEWBY, McDONALD & BURDITT, for appellant; GEORGE M. BURDITT, of counsel.

MURPHY O. TATE, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an action by the plaintiff to recover under the terms of a policy of insurance issued by the defendant to Harry J. Corbidge, insuring him against loss sustained on account of injuries to others by reason of ownership, maintenance, or use of a certain automobile, in an amount of $5,000. An action was instituted by the plaintiff against Corbidge to recover damages from the defendant for personal injuries growing out of an automobile accident. Upon a trial, the court entered a judgment for $5,000 against Corbidge. The trial in the instant case was before the court without a jury, and after a hearing, the court found for the defendant and entered judgment upon the finding. From this judgment the plaintiff appeals.

The declaration consists of four counts, to which the defendant filed a plea of the general issue, together with a special plea that Corbidge failed to co-operate with the defendant, and to aid in the preparation and trial of the original case filed by the plaintiff.

No point is made by the parties as to the sufficiency of the pleadings. It is stipulated by the parties that the defendant issued the policy of insurance; that the premium therefor was paid, and that the policy was in force at the time of the accident on November 26,

1928; that the plaintiff filed her suit in the superior court against Corbidge, the insured, as a defendant, and on November 19, 1930, recovered a judgment in the sum of $5,000; that the defendant company de-- fended the action, and that Tate appeared as the attorney for the defendant in the present action, and also appeared for the defendant in the personal injury suit.

The policy provides, in substance, that the Fort Dearborn Casualty Underwriters agreed to indemnify Harry Corbidge, who resided at 9420 Throop street, Chicago, Illinois, from November 22, 1928, to November 22, 1929, subject to the provisions of the policy, against any loss sustained by him for damage on account of bodily injuries actually suffered by any person, by reason of the ownership, maintenance, or use of the Chevrolet Coach described therein, to the extent of $5,000 for the death of one person, and $10,000 for more than one person.

The insurer contracts to defend on behalf of the assured any action brought against the insured to enforce a claim, and the policy further provides that if an execution is issued upon a judgment against the insured and returned unsatisfied, an action may be instituted against the underwriters for the amount of the judgment.

One of the conditions of the policy is in part as follows:

"Assured shall aid said Underwriters in effecting settlements, securing information and evidence, the attendance of witnesses and the procurement of appeals or like proceeding; the Assured to furnish an acceptable appeal bond when in the opinion of the Underwriters an appeal is necessary or desirable, the Underwriters to pay the premium for securing said bond, and the Assured shall not voluntarily assume any liability or interfere in any negotiations for settlement,

or in any legal proceeding, or incur any expense except at his own cost, without the written consent of said Underwriters.''

The following facts appear from the evidence offered by the plaintiff: The institution of the original action, the filing of the declaration, the verdict of the jury finding Corbidge guilty of wilful and wanton negligence, the entry of judgment, the issuance of an execution which was returned unsatisfied, and the schedule filed with the sheriff of Cook county by Corbidge, which does not show any property subject to levy.

It further appears from the testimony of Corbidge that he was living at 9420 Throop street when the policy was issued on November 22, 1928; that he moved from there in August, 1929, to 7601 Evans avenue, where he lived until April, 1930, when he moved to 10829 Eggleston avenue, where he lived for six months before moving to 134 West 108th place, his present address in Chicago; that on November 26, 1928, he was driving a Chevrolet car at 79th and Vincennes avenue when the accident happened to the plaintiff; that he made a statement about the accident to the agent of the defendant in the instant case, and that he subsequently received a letter from the defendant dated February 5, 1929, addressed to him at 9420 Throop street, signed by J. W. Lamb, Fort Dearborn Insurance Company, requesting him to call at the office within five days ''in order that we may discuss with you the accident occurring November 26, 1928,'' and that he went to the office of the company, saw J. W. Lamb, and in answer to his questions told him how the accident happened; that he did not have any witnesses; that he could not get the names of any; that he had tried but they would not give their names; that he assisted the woman who was injured to the hospital, to all of which Lamb replied, ''That is pretty

tough, but we can't win all the time''; that Corbidge then told Lamb he no longer had the machine, and was advised by Lamb that he could turn in the policy, which he did, and took a receipt therefor. This receipt appears to bear the signature of Lamb.

It further appears from Corbidge's testimony that a summons was served on him a few days before New Year's Day, 1930; that he took the summons to the insurance company's office, receipt of which was admitted by the defendant; that he was at the same office he had been to before; that he saw a girl sitting at the desk and asked her what the summons was for, saying that he thought the case was settled, and she replied, ''No, it is still pending,'' and that she would give the summons to one of the lawyers; that one of the lawyers asked him why he did not bring the summons sooner, to which Corbidge replied that he had a couple of days' work. He also testified that he told the lawyer he had moved, the lawyer saying, ''Well, give your address to the girl''; that he then turned around and gave the address of 7601 Evans avenue; that he did not receive any further communication from the defendant; that in March, 1930, he went back to the office of the company, again saw the young lady at the desk, asked how the case was progressing, whether it had been in court, to which she replied that it had not, that the lawyers were taking care of it, and that at that time he was still living at 7601 Evans avenue; that when the execution was served upon him he took it over to the insurance company and filed a schedule in the sheriff's office; that at the insurance company he saw the same young lady he had seen before, and asked her, ''How come I wasn't notified?'' to which she replied, ''Maybe they didn't need you.''

It also appears from the evidence that C. T. Driscoll, who appeared as the plaintiff's attorney in the original action, testified that in order to comply with

the terms of the policy it was necessary for him to locate Corbidge so that an execution could be served upon him personally; that he called at Throop street, and at that address he was informed upon ringing the bell that Corbidge had moved to 7601 Evans avenue. Upon an investigation he found that Corbidge had moved to Eggleston avenue and then to 134 West 108th place, where he was finally located. All this occurred within one month after the judgment was entered in the personal injury litigation.

It also appears as part of the evidence of the plaintiff that the claim had not been paid, and that the plaintiff received a letter dated February 21, 1929, addressed to her by the Fort Dearborn Insurance Company, stating in part: "Would advise you that we have now fully completed our investigation of the case and are therefore in a position to take the matter up with you for discussion at any time you can call at our office for that purpose."

In contrast to this evidence offered by the plaintiff, it appears that Tate, an attorney, appeared on behalf of the defendant insurance company, and entered his appearance on behalf of the defendant Corbidge in the personal injury action, and that he filed pleas for the defendant Corbidge in the original action; that the personal injury litigation was upon the trial call on November 15 and 16, 1930; that N. A. Long, an investigator employed by Tate, the attorney, was to get in touch with the defendant so that Tate could prepare the case for trial. It further appears from the evidence offered by the defendant that on November 17, the day before the case was actually reached for trial, Long reported his inability to find Corbidge; that Long called at 9420 Throop street, which was the only address they had in the company's file, and found that Corbidge no longer lived at that address, and made inquiry in the neighborhood, but could not find Corbidge. Just what investigation was made by Long is not clear from the record. It does not appear that he

called at the address, 7601 Evans avenue, which was left by Corbidge with the girl in the office of the defendant after the accident. The attorney, upon receipt of the information from Long that he was unable to find Corbidge, sent a telegram notifying Corbidge that the Duffy case was on trial, and that it was necessary for Corbidge to report at the lawyer's office at once if he expected protection under the policy in question. It is singular that this telegram should have been sent to an address where, upon investigation by the company's investigator, Corbidge could no longer be found. There is no evidence that the telegram sent by the company was forwarded in an effort to locate Corbidge. It is the opinion of the court that this telegram was but an idle gesture, and that the investigation made by the investigator was not made in good faith; that, in fact, the good faith appears to have been altogether on the part of Corbidge, who endeavored to comply with the terms and provisions of the insurance policy. He notified the company of the accident, and of the lawsuit; he appeared and made a statement of the accident after receipt of a letter from the company, and even called several times to inquire what progress was being made in the litigation.

In cases of this kind where the question is one of fact, the rule is that the court must determine from the facts not only the good faith of the insured, but also that of the casualty company, and in the instant case it is apparent that Corbidge did all that was required of him under the provisions of the policy.

In considering the evidence, we believe that the trial court erred in finding the issues for the defendant upon what appears to be against the manifest weight of the evidence.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

WILSON, P. J., and HALL, J., concur.