Robert Hannig, Appellee, v. Hartford Accident & Indemnity Company, Appellant.

Gen. No. 10,455.

Opinion filed February 27, 1951. Released for publication March 27, 1951.

CASSIDY & SLOAN, of Peoria, for appellant.

LOUIS F. KNOBLOCK, of Peoria, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

The plaintiff, Robert Hannig, in this action recovered a judgment in the Tazewell county circuit court in a personal injury suit against John Dircks in the sum of $5,000 on November 12, 1947. He was not able to collect against the judgment debtor and commenced this suit against the Hartford Accident and Indemnity Company who had issued its automobile liability policy covering the bus which was being driven by John Dircks and which caused the injuries to the plaintiff. It was alleged in the present complaint that Harold and Fred Mehl were the owners of the bus in question; that the defendant herein issued a policy of liability insurance to them; and that John Dircks was driving the bus with their permission and was an "insured" according to the terms of the policy and entitled to its benefits.

The principal defense relied upon by the defendant was that John Dircks had failed to co-operate with the insurance company in the trial of the case in Tazewell county, and that such was in violation of par. 12 of the insurance policy, reading as follows: "Assistance and Cooperation of the Insured. The Insured shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The Insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

In support of this affirmative defense, the defendant introduced the following testimony. Mr. Crutcher testified that he was associated with the law firm of Cassidy, Sloan & Crutcher in the practice of law; that in March or April 1947, he had a conversation with John Dircks wherein he told Dircks that his trial in Tazewell county

would be called in a week or two, and that it would be necessary for him to appear, and sought to ascertain where he could get in touch with Dircks. Dircks told him that the best means of contacting him was to call the Kozee Inn, a tavern in Creve Coeur. Subsequently, Mr. Crutcher called the tavern for him. He said he was told that Dircks was not in but would be in later; that he then told them to give him the message that his lawsuit was set for trial in Pekin the next morning. The suit was tried the next day, but Dircks did not appear. Crutcher testified further that in a conversation with Dircks on the second day of the trial, that Dircks told him that he had received the message to appear prior to the trial, but that he did not want to pass up the opportunity he had to earn some money driving a sound truck in an election at Creve Coeur. He also testified that several days thereafter, Dircks appeared at his office and repeated his previous explanation of his failure to appear at the trial; that on that visit Mrs. Conway, a stenographer in the office, wrote on the typewriter a statement consisting of two typewritten pages which Dircks read over and signed in the presence of Mr. Crutcher and Mrs. Conway. Mrs. Conway testified concerning the statement which contained a complete recital of the several interviews which Crutcher had with Dircks.

John Dircks testified in rebuttal for the plaintiff substantially as follows: that he never at any time, either in Mr. Crutcher's office or over the telephone, told him that he was unable to attend the trial because of his engagement to drive the sound truck; that he never received notice of the trial until after the election was over and he was in the tavern; and that he immediately called the Cassidy law office and was told that the trial was over. He further testified that he had told Mr. Crutcher that he could be reached at his mother's home, but that no call was made there for him, and that his

542

only reason for not appearing at the trial was because he had no notice. He further testified that he was in Crutcher's office and signed the statement referred to; that he did not read it over, but was told that it was some sort of release of the bus company; and that it was prepared prior to his visit to the office.

Another rebuttal witness was William C. Wheeler, an employee of the Kozee Inn Tavern. He said that he received a call from a Mr. Crutcher asking him to contact Dircks and have him call the office; that he did not see Dircks that same day and not until five o'clock the following day because the tavern was closed during election hours; that when he did advise him of the message, he went immediately to call the lawyer and later reported he did so.

■ It is readily apparent from the foregoing that there was presented for the jury's determination an issue of fact which they resolved adversely to what the defendant claims.

Appellee argues that the defendant company did not make a very serious effort to notify Dircks; that they did not call him at his mother's, whose telephone number was given Mr. Crutcher; that they were content to make one call and leave the message with a stranger; that Creve Coeur is only six miles from Pekin on the paved highway between Peoria and Pekin; and that probably appellant's counsel went right through that little town on their way to the trial but did not see fit to search out their client and take him with them.

■■ Appellant in this appeal contends that the jury's determination is contrary to the manifest weight of the evidence. With this contention we cannot agree. One of the leading cases in Illinois on the issue identical with the one under consideration is that of *Duffy v. Ft. Dearborn Casualty Underwriters*, 270 Ill. App. 143. The court at page 149 said: "It is the opinion of the court that this telegram was but an idle gesture and

that the investigation made by the investigator was not made in good faith; that, in fact, the good faith appears to have been altogether on the part of Corbidge, who endeavored to comply with the terms and provisions of the insurance policy. He notified the company of the accident and of the lawsuit; he appeared and made a statement of the accident after receipt of a letter from the company, and even called several times to inquire what progress was being made in the litigation. In cases of this kind where the question is one of fact, the rule is that the court must determine from the facts not only the good faith of the insured, but also that of the casualty company and in the instant case it is apparent that Corbidge did all that was required of him under the provisions of the policy.''

The only charge of non-co-operation made against John Dircks is that he did not appear at the trial when notified. When he failed to appear, his counsel did not make a motion for continuance, nor did they seek to withdraw as his counsel.

We are of the opinion that the jury did not act unreasonably in rejecting appellant's defense of ''non-co-operation.''

Having disposed of the most serious issue presented on the appeal, we will now advert to one that received very little attention from counsel on either side in their briefs. Plaintiff's Exhibits 3 and 4 were certified copies of executions issued by the Tazewell county circuit clerk in the injury suit. Defendant objected to their introduction into evidence, and upon this subject have this to say in their brief: ''What issue they were offered to prove is difficult even to guess. The first execution issued on December 23, 1947 (Plaintiff's Exhibit 4), shows that it was returned by the Sheriff on December 26, 1947—property found 'per order plaintiff's attorney.' It was never even served on Dircks. The second execution dated June 16, 1948 (Plaintiff's Exhibit

3), contains no return whatsoever except service of a copy on Dircks. The two of them could serve no purpose except to mislead the jury into believing that Hannig had made two honest efforts to collect the judgment from Dircks, who therefore must be antagonistic to Hannig and would testify to nothing favorable to him unless compelled to do so. This is not a garnishment suit and there was no necessity to have an execution properly returned 'no property found' as a condition precedent to suit. The two executions neither of which was properly returned even for a garnishment suit should never have been admitted in evidence." Appellant did not raise the question in the pleadings of the necessity of the return of the execution unsatisfied as a condition precedent to a suit against the insurance carrier.

Then we were confronted with a new turn in the thinking of counsel for appellant when they made their oral argument that the present action could not be maintained without proof of an execution duly issued, served, and returned unsatisfied. This gives rise to a question undetermined in this state. According to Illinois Insurance Code Annotated (1939), sec. 388 [Ill. Rev. Stat. 1949, ch. 73, par. 1000; Jones Ill. Stats. Ann. 66.1063], the Illinois statute was amended in 1937 to establish the requirement that liability insurance policies must include a provision that execution be returned unsatisfied because of the insolvency or bankruptcy of the insured. Prior to 1937, the injured party was not limited in actions against the insurance company to those cases in which an execution had been returned unsatisfied because of the insolvency or bankruptcy of the insured. An action was available against the insurance carrier as soon as a final judgment had been rendered against the insured.

As indicated above, there are no decisions of Illinois courts construing the statute requiring insurance poli-

cies to contain a provision that return of execution unsatisfied is necessary before the injured party can sue the insurance carrier. In New York and in New Jersey, where the statutes contain a provision similar to that of the State of Illinois, it has been held that return of execution unsatisfied is a condition precedent to an action by the injured party against the insurance carrier. 85 A. L. R. 54; 106 A. L. R. 526; Illinois Insurance Code Anno. sec. 388 (1937); *Universal Indemnity Ins. Co. v. Caltagirone,* 119 N. J. Eq. 491, 182 Atl. 862 (1936).

The policy here in question is not quoted in its entirety in the Abstract of Record. However, the abstract does contain the following provisions from the policy in question: "In consideration of the premium stated in the Policy to which this endorsement is attached, the company hereby agrees to pay any final judgment recovered against the insured for bodily injury to or death of any person . . . resulting from the negligent operation, maintenance, or use of motor vehicles under Certificate of Public Convenience and Necessity or permit issued to the Insured by the Interstate Commerce Commission . . . ." "It is understood and agreed that upon failure of the company to pay any such final judgment recovered against the insured, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment. The bankruptcy or insolvency of the insured shall not relieve the company of any of its obligations hereunder. The liability of the company extends to such losses, damages, injuries, or deaths whether occurring on the route or in the territory authorized to be served by the Insured or elsewhere, except as follows: 'No Exceptions.' "

It appears from the foregoing that the liability of the insurance company in this case is not dependant upon any showing of execution returned unsatisfied.

In *Kindervater v. Motorists Casualty Ins. Co.,* 117
N. J. L. 131, 187 Atl. 362 (1936), the Court of Errors
and Appeals of New Jersey had before it a problem
very similar to the one in the instant case. The injured
party had recovered judgment against the insured in
an action arising from a collision of three automobiles.
In a proceeding against the insurance company the
injured party established his judgment against the in-
sured and produced in evidence the execution which
shows the following return: "This writ is hereby re-
turned unsatisfied by order of attorney of the plain-
tiff." The trial court nonsuited the injured parties
upon the ground that the sheriff's return did not show
insolvency or bankruptcy of the insured. Much of the
argument was devoted to the insufficiency and impro-
priety of the return of the execution, in that it was not
based upon the findings of the sheriff but upon direc-
tion of the attorney for the judgment creditor. The
court, however, avoided that problem by stating that
the contract of insurance extended to the injured party
a right of action against the insurance company. The
insurance contract provided: "The company is bound
to the extent of its liability under this policy to pay
and satisfy and protect the assured against the levy of
execution upon any final judgment that may be re-
covered upon any claim covered by this policy as in the
policy set forth and limited and an action may be main-
tained upon such judgment by the injured person or
persons or such other party or parties in whom the
right of action vests to enforce such liability of the
company as in the policy set forth and limited." The
court says, on page 363: "This not only complies with
but exceeds the requirements of P. L. 1924, page 352
. . . and extends to the appellants a right of action
against the respondent without the issuance of an exe-
cution and a return thereof unsatisfied because of the
insolvency or bankruptcy of the insured."

The New Jersey case just cited is comparable to a Circuit Court of Appeals decision from the Fourth Circuit. The case of *Bass v. Standard Accident Ins. Co. of Detroit, Mich.*, 70 F. (2d) 86 (1934) involved a situation in which the injured party had brought suit against the insured, obtained judgment, and later sued the insurance company upon failure to recover on his judgment. The insurance company set up as defense that the policy required the injured party to bring suit within the time limit set forth within the policy. The question arose as to when the limitation in the policy began to run. The insurance company maintained that the right of action against it arose as soon as the injured party had obtained judgment against the insured. The injured party maintained that the right of action did not accrue until execution was returned unsatisfied. The statute involved (Maryland) is similar to the one in Illinois. The court says, on page 87: "The policy in the pending case makes no requirement as a condition precedent that an execution on judgment against the insured must be returned unsatisfied, before a suit by the injured person against the insurer may be begun." The court then stated that the right of action in that case accrued upon the entry of judgment against the insured and that the limitation period of the policy began to run from that date. On page 88, the court says: "There is no inconsistency between this provision and that contained in the statute. The policy merely eliminates one of the steps required of the injured party by the statute by omitting the requirement of an unsatisfied execution."

██ ██ From the New Jersey case and the circuit court of appeals case, involving the Maryland statute, we find that, although the statutes involved may require a return of execution unsatisfied because of the insolvency or bankruptcy of the insured, the injured party need not show the execution unsatisfied if the policy

■■■■■■■■

■■■■■■■■

does not so require. If the policy gives a greater benefit to the injured party and eliminates one of the steps required in the statute before suit can be brought directly against the insurance carrier, then the terms of the policy govern. The purpose of the statute and of the policy is to secure to the traveling public and to injured parties a beneficial interest in the proceeds of the policy.

It is our conclusion in view of the foregoing analysis that the entry of judgment herein was without substantial error and should be affirmed.

*Judgment affirmed.*