Paul Panczko for Use of Bernard C. Enright, and Paul Panczko for Use of James B. Enright, Appellees, v. Eagle Indemnity Company of New York, Appellant.

Gen. No. 45,477.

Opinion filed February 11, 1952. Released for publication March 25, 1952.

HUBBARD, HUBBARD & DORGAN, of Chicago, for appellant.

AARON R. EPPSTEIN, JAMES J. O'BRIEN, and HARRISON L. DOD, all of Chicago, for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

On August 25, 1946 Paul Panczko, with the consent of Louise Grygiel, his sister, was driving her automobile when it collided with a car belonging to James Enright, in which Bernard Enright was a passenger. March 6, 1947 Bernard and James Enright brought suit against Louise Grygiel and Paul Panczko for personal injuries sustained in the collision. The Eagle Indemnity Company of New York, which carried insurance on the Grygiel car, was notified of the accident and of the suit. It had its attorneys enter the appearance of both Grygiel and Panczko in the superior court and conduct the defense. The attorneys employed by the company notified Louise Grygiel and Paul Panczko on September 14, 1949 that the case was on the trial call, and Panczko was requested to appear at their office. He receipted for the letter of notification and, as requested, gave his pretrial deposition about October 17, 1947. The case, however, was not tried at that time but was continued. Louise Grygiel and Paul Panczko were advised of the continuance and told that they would be notified when the case would again be called for trial. Subsequently, on January 17, 1950, the attorneys for the insurance company sent three registered letters—one to Paul Panczko and Louise Grygiel at 2648 West Iowa street, where Louise Grygiel resided; a second to Panczko at 2650 West Haddon avenue, where Panczko had formerly resided with his wife, from whom he was separated; and a third letter to Panczko in care of Veterans Social Club, 1518 West Grand avenue, which Panczko frequented. The letters were identical and asked the addressees to telephone the attorneys if they would be available for trial, as the case was on call. The letter to Louise Grygiel and Paul Panczko on Iowa street was receipted for by Louise Grygiel; the one addressed to Panczko on Haddon avenue, where he formerly lived, was receipted for by his wife; and the one sent to the Veterans Social Club, by a stranger. There is no evidence that the at-

145

torneys had any response to these letters; nor is there any claim that any of the signatures on the return receipts were made by Panczko.

The case went to trial on Friday, January 20, 1950, was resumed on Monday, January 23, and was concluded January 24. On January 20, Stanley Barloga, investigator for the insurance company, was given separate but identical letters addressed to Paul Panczko and Louise Grygiel at 2648 West Iowa street, advising that the case was on trial and requesting them to come to the attorney's office January 23. Barloga went first to the Haddon avenue address, where Panczko had formerly resided, and was told by Mrs. Panczko that she and her husband had had a disagreement and that he had gone to live with Mrs. Grygiel and his mother. Barloga then went to the Iowa street address, and Mrs. Grygiel and the mother told Barloga that Panczko "was around" but they did not know when he would be home. Barloga delivered her letter to Mrs. Grygiel, receiving her signed receipt therefor; he also left Panczko's letter with her, taking her receipt for it. It does not appear whether the letter to Panczko was sealed, whether Mrs. Grygiel read it, or whether she knew what she was receipting for. Barloga when testifying could not say whether Panczko received the letter. He made no effort to contact Panczko after January 20.

On Monday, January 23, Mrs. Schuler, a stenographer in the office of the insurance company's attorneys, telephoned Mrs. Grygiel at her home to advise her that the case was on trial; Mrs. Schuler was unable to reach Panczko by telephone at the Haddon avenue address and left a similar message with Mrs. Panczko for him. On the same day Helmut Mueller, a clerk in the attorneys' office, telephoned Panczko's home; Panczko was not there and Mueller requested his wife to tell him to come to the office. Mueller likewise telephoned Mrs.

Grygiel, leaving the same message. On Tuesday, January 24, Miss Scott, the attorneys' switchboard operator, telephoned Mrs. Grygiel and Mrs. Panczko, making a similar request. About 2:00 p. m. on that day Robert Pelger, an employee, was relieving the regular operator at the attorneys' switchboard. He testified that he had received a telephone call from a party who identified himself as Panczko and who asked for Mr. Hubbard, the insurance company's attorney; the caller said that he would not appear in court. Pelger located Mr. Hubbard by telephone in Judge McWilliams' courtroom, informed Hubbard that Panczko had called and said that he did not want to come in, and then put the caller through the switchboard to Mr. Hubbard. The telephone conversation related by Pelger was his only contact with Panczko, and he did not profess to recognize or identify the voice. Shortly thereafter Hubbard told Judge McWilliams in open court that he had just been informed by Panczko by telephone that he would not come to court to testify. The subject matter of that conversation is included in the stipulation of facts filed in the present case; it is not, however, evidence that Panczko refused to co-operate, but merely what the attorney reported to the judge. At the close of plaintiff's evidence the court granted a motion for a directed verdict as to Louise Grygiel, and reserved its ruling on a similar motion as to Panczko, which was subsequently denied. Following Hubbard's relation of the telephone conversation with Panczko, William Waters, claim manager for the insurance company, who was present in court, directed Hubbard to withdraw from the defense, but his motion to do so was overruled and the case proceeded to a conclusion resulting in a verdict and judgment awarding $3,500 to Bernard Enright and $357.29 to James Enright.

The instant garnishment proceeding was filed in July 1950, after execution against Panczko was returned no

part satisfied. Interrogatories propounded by the beneficial plaintiffs were answered by the insurance company, and thereafter the parties entered into a stipulation of the essential facts upon which the garnishment suit was predicated. November 30, 1950 the jury which had been impaneled in the garnishment proceeding returned a verdict finding that the issues were for plaintiffs and that at the time of service of the garnishment summons upon the insurance company as garnishee there was due and owing to Paul Panczko for the use of Bernard and James Enright, respectively, the sums of $3,500 and $357.29; at the same time the jury returned their answer to the special interrogatory submitted to them by the court at the request of the insurance company: "Ques. Was Paul Panczko requested by the defendant or its attorneys to defend and testify? Ans. No." Following an adverse ruling on the defendant garnishee's motion for judgment notwithstanding the verdict or in the alternative its motion for a new trial, judgment was entered on the verdict and the special interrogatory in the garnishment suit, from which this appeal is taken.

The defense interposed by the insurance company in the garnishment suit was nonco-operation on the part of Paul Panczko in the defense of the original suit. The policy of insurance is quite voluminous but, for the purposes of this decision, its pertinent provisions are as follows: the company agreed, subject to the conditions and terms of the policy, "to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages . . . sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile"; "the unqualified word 'insured' " was defined to include "the named insured and . . . also . . . any person . . . using the automobile

148

. . . provided the actual use of the automobile is with the permission of the named insured"; and "the insured shall co-operate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits." There is no provision in the policy as to when, how or upon whom notice shall be served to secure the co-operation of the insured or his attendance at the trial. This being left to conjecture, it was incumbent on defendant to prove, as a matter of fact, that it acted in good faith and that it also gave reasonable and timely notice to Panczko; and it was within the province of the jury to decide those issues; the jury was so instructed without objection, as hereinafter appears.

The question presented is whether Paul Panczko, being one of the persons within the omnibus clause of the policy, refused to attend the trial and testify. The insurance company takes the position that the facts are undisputed; that the question is one of law; and that the court should, therefore, either have directed a verdict or entered judgment for defendant notwithstanding the verdict. It predicates its contention upon the letters mailed and delivered, as heretofore related, and also upon the telephone conversation between Panczko and Hubbard on the afternoon of the last day of the trial, as included in the stipulation of facts. After a careful examination of the record we have reached the conclusion that the evidence falls short of showing a definite refusal by Panczko to co-operate, and we think that the court, under instructions which were not questioned and by the interrogatory propounded at the request of the insurance company, properly submitted to the jury the question whether Panczko failed or refused to co-operate within the provisions of the insurance policy.

As already stated, when the case was expected to be reached for trial in September 1949, Panczko indicated his willingness to co-operate by responding to a letter of notification of trial and by giving his pretrial deposition at the attorneys' office as requested. The case was continued, and Paul Panczko and Louise Grygiel were told that they would be informed when the case would again be called for trial. The record suggests no plausible reason for any change in Panczko's attitude when the case was finally reached for trial in January 1950. There is no evidence that he actually received any of the notices sent to him or any of the telephone messages left for him. No inquiry appears to have been made by anyone in the attorneys' office whether Panczko had received any of the registered letters of January 17 or the letter of January 20 delivered by personal messenger, or if his wife, his sister, his mother or the stranger at the Veterans Club had ever communicated with him regarding the letters or the telephone calls, or whether he had been at his former home or at the Iowa street address or at the social club after Barloga called on January 20. The fact that the insurance company sent its registered letter of January 17 to Panczko to three addresses suggests that it was aware that it was dealing with a somewhat inaccessible individual. Since Panczko did not appear at the trial on Friday, January 20, defendant must have had some doubt as to whether any of the notices had been received; nevertheless, during the intervening Saturday and Sunday no follow up was attempted to ascertain whether he had received notice. It would have been a simple procedure for the insurance company to subpoena Mrs. Grygiel to interrogate her as to whether or not she had seen Panczko, and had advised him that the case was on trial and that the insurance company wanted him to appear and testify. These were all circumstances which the jury had the

right to consider and from which to draw inferences not only as to Panczko's willingness or unwillingness to co-operate, but also as to the good faith of the insurance company. "If there be any difference of opinion on the question so that reasonable minds may not arrive at the same conclusion, then the question is one of fact for the jury. . . . And even where there is no dispute in the evidence ·but where inconsistent conclusions may legitimately be drawn the question is also one for the jury." *Minters v. Mid-City Management Corp.*, 331 Ill. App. 64.

Moreover, the evidence of one of the witnesses on behalf of the defendant garnishee certainly presented a question of fact for the determination of the jury. Waters testified that he had heard from one of his investigators, a week or two prior to January 20, that Panczko would not testify; under the circumstances defendant could have instructed its counsel to decline to go ahead when the case was reached for trial, and then asked leave to withdraw as counsel. The only defense interposed was nonco-operation on the part of Panczko. Defendant knew as well on January 20 as it did on January 24 what its defense would be, and since Panczko did not appear at the trial on January 20 defendant could have preserved its position at the outset of the trial; instead it went ahead with the trial on January 20 without objection, made no motion for a continuance, did not ask to withdraw from the case until the closing session on January 24.

These circumstances were presented to the jury in instructions offered by plaintiffs, to which defendant made no objection, and which are not challenged in defendant's briefs. The instructions read: "The jury are instructed that if they believe from a preponderance of the evidence that within a reasonable time before the trial of the case of Bernard Enright and James Enright, *vs.* Louise Grygiel and Paul Panczko,

the garnishee insurance company knew or had reason to believe that Paul Panczko was not going to attend the trial of the case and was not going to co-operate in the trial of the said case in accordance with the terms and provisions of the insurance policy, here in evidence, and that there was sufficient time between the obtaining of knowledge, if any, on the part of the said insurance company of the said intended default by the said Panczko, if any, to have enabled the insurance company to have withdrawn from the case, and if you further find that despite that knowledge, if any, said insurance company through its attorney, proceeded to trial in the case and concluded the trial of the case, then you are instructed that the said insurance company waived its defense of nonco-operation on the part of Panczko, and that such defense is not available to the insurance company in the trial of this garnishment action. Before the Eagle Indemnity Insurance Company, garnishee-defendant in this case, can avail themselves of the defense that Paul Panczko did not co-operate under the terms and provisions of the insurance policy issued by the said company to Louise Grygiel, the company must prove by a preponderance of the evidence that they acted in good faith in the premises and that they gave Paul Panczko reasonable and timely notice of the pending trial of the lawsuit between Bernard and James Enright and the said Panczko and Grygiel, and a reasonable opportunity to attend the trial.'' In an instruction offered by defendant and given by the court which incorporated the policy provision with respect to co-operation, the question whether Panczko was requested to attend the trial but failed to do so, was also submitted to the jury, as was of course the special interrogatory which was answered adversely to defendant's interests.

 Upon this state of the record we are of opinion that the defense of nonco-operation was properly sub-

152

mitted to the jury as a question of fact to be determined from the circumstances in evidence and all legitimate inferences that could be drawn therefrom. It was for the jury to assess not only the good faith of the insured, but also the good faith of the insurance company. *Minters v. Mid-City Management Corp.*, *supra; Hannig v. Hartford Acc. & Indem. Co.*, 342 Ill. App. 539.

For the reasons indicated the judgment of the superior court should be affirmed, and it is so ordered.

*Judgment affirmed.*

BURKE, P. J. and NIEMEYER, J., concur.