Maxine G. PAWLIK now known as Maxine G. Shearin, Plaintiff,.

v.

William R. NICHOLS, Defendant,
State Farm Mutual Automobile Insurance Co., Garnishee.

Civ. No. 1575-D.

United States District Court
E. D. Illinois.
March 16, 1961.

Appleman, Zimmerly & McKnelly, Champaign, Ill., for plaintiff.

Thomas C. Stifler, Danville, Ill., for garnishee.

PLATT, Chief Judge.

This is a garnishment proceeding against State Farm Mutual Insurance Company. Maxine J. Pawlik, the plain-tiff and garnisher, now known as Maxine J. Shearin, obtained a verdict of $18,500 against William R. Nichols, and a verdict of $2,000 against Lawrence Nichols. Both verdicts were returned on October 22 and judgment was entered on the verdicts for the full amount on October 23, 1958. Originally this was a personal injury action against the defendant, William R. Nichols, for injuries resulting from a vehicle collision which occurred on November 22, 1956. Nichols was driving a Ford 1½ ton truck which collided with the automobile in which the plaintiff was riding. The truck was owned by Kenneth Hodge, who was also a defendant in the action. Joined with this action was a suit under the Dram Shop Act of Illinois against Lawrence Nichols, (no relation to William R. Nichols) who allegedly sold liquor to William R. Nichols, causing him to become intoxicated. On February 17, 1959, on motion of plaintiff and defendant, Lawrence Nichols, judgment against Lawrence Nichols was set aside and a new trial granted. This action was then dismissed against Lawrence Nichols pursuant to stipulation.

On the date of the collision there was in effect an automobile liability insurance policy issued by State Farm to Kenneth Hodge on his truck. Hodge employed the defendant, Nichols, as a farm hand. The policy contained the usual permissive user clause. Hodge was dismissed at the close of the plaintiff's evidence in the original action because Nichols was not driving the truck at the time of the collision within the scope of his employment but was on a mission of his own.

In reply to the interrogatories in the garnishment action State Farm made the following answer:

"Because of lack of cooperation on the part of said William R. Nichols, as required by said policy. We are not willing to pay anything towards said judgment."

The policy provided as follows:

"13. Assistance and Cooperation of the Insured. The insured shall cooperate with the company and,

upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * * "

In the collision between the truck driven by Nichols and the automobile in which the plaintiff was riding one occupant of the automobile received injuries from which he died, and State Farm settled this claim for $4,000. Another occupant of the same car suffered personal injuries as a result of the collision and State Farm paid in settlement of this claim $3,960.

Nichols gave a complete statement of the description of the occurrence to the Attorney at Danville, Illinois, who represented State Farm shortly after the collision. In this statement Nichols said he was not intoxicated and related facts which indicated he was not negligent in the manner in which he drove the truck at the time of the collision. Thereafter, Nichols was indicted by the grand jury of the Circuit Court of Vermilion County, Illinois, and charged with reckless homicide. State Farm arranged bond for Nichols. Nichols had been staying at Cissna Park, Illinois, but after informing the Danville Attorney for State Farm of his address where he could be reached he went to his home in Big Stone Gap, Virginia. He returned to Danville, Illinois, at his own expense when the homicide case was set for trial in Danville in the Circuit Court of Vermilion County, Illinois, but the cause was continued. He again returned at his own expense for the second setting, at which time the case was tried and Nichols was acquitted.

In May, 1957, before the instant personal injury case was filed on September 6, 1957, in this court, Kenneth Davenport and another representative of State Farm located Nichols at Valley Lake, Virginia, after stopping at his father's home where Nichols was staying. Davenport informed Nichols that should a civil suit be started against him that he should contact him at Bristol, Virginia, and the Company would arrange for his expenses to attend the trial. Nichols was served with summons in the plaintiff's personal injury action on September 7, 1957, in Danville, Illinois, while he was on trial in the criminal action.

On June 2, 1958, Nichols was married. Nichols had a seventh grade education, and was a man of no financial means.

On September 20, 1957, Mr. Kurtock, Superintendent of Claims for State Farm Mutual, sent a registered letter to Mr. Nichols, Rural Route 2, Box 180, Milford, Illinois, informing Mr. Nichols that its Danville Attorney would represent him in the law suit against him by Miss Pawlik. He also requested that he comply with the requests of this Attorney and should co-operate in "the handling of this litigation." The letter also informed Mr. Nichols that the claim in the suit was in excess of the protection afforded by the policy, and that it was agreeable with the company for him to procure his own attorney, at his own expense, in addition to the attorney that the State Farm would employ and compensate. The receipt on this registered letter was returned signed, "William R. Nichols, Mrs. Ray Akers, September 24, 1957." Mrs. Akers was Nichols' sister, and her husband was in the truck with Nichols at the time of the collision. There was no proof that Nichols received this letter.

The personal injury action was set for trial in this court on August 19, 1958. On August 21, 1958, the Danville Attorney for State Farm sent a letter to both Kenneth Hodge at Wellington, Illinois, and to William R. Nichols, P. O. Box 65, Big Stone Gap, Virginia, informing them that the case was set for trial on Monday, October 20, 1958, at 9:30 a. m. D.S.T., and to "Save this time." Enclosed with the letter was a copy of the court's notice of the trial date. In this letter Nichols was also informed "we will be in touch with you before trial time."

On October 2, 1958, the Danville Attorney representing State Farm again wrote a letter to Nichols at P. O. Box 65,

Big Stone Gap, Virginia, informing him that the Pawlik suit would be tried on October 20, 1958, in this court, and also suggested that he meet him in his office at 8:00 o'clock in the morning, to be ready to go to trial. Nichols admitted receiving both of these letters.

On the morning of the trial October 20, 1958, Nichols was not present in court. The Danville Attorney for State Farm representing him appeared in court and the following colloquy occurred:

"The Court: On what grounds?

"Mr. Stifler: And we say that immediately upon receipt of notice of setting we sent notice to the defendant, William R. Nichols at Big Stone Gap, Virginia. That was in August, 1958, and that on October 2nd, 1958 we sent to Mr. Nichols, William R. Nichols notice of the setting and asking that he be in our office at eight o'clock this morning ready for trial which was to be held at 9:30 this morning.

"Now Mr. Nichols hasn't shown up by eleven o'clock in the morning. Therefore, we ask that the cause be continued to give us a chance to have him present.

"The Court: Is there any objection by any of the parties?

"Mr. Zimmerly: We object, your Honor, on the basis that we have subpoenaed our witnesses for the plaintiff. Included among those we have down here a witness from Chicago, a specialist whose practice is such that he can't come down tomorrow, and we therefore object and ask that the case be heard at this time.

"The Court: Mr. Stifler, would you consent to the one witness— your other witnesses will be here tomorrow?

"Mr. Zimmerly: So far as I know.

"The Court: Would you consent to pick the jury and examine this one witness?

"Mr. Stifler: That would be out of order, your Honor.

"The Court: I know.

"Mr. Stifler: We don't want to consent to that.

"The Court: All right. Let the record show that we have waited until eleven o'clock. The jury is here. How about the other defendants the other defendant Nichols, and Hodge? How about Hodge. Is he here ready for trial?

"Mr. Stifler: Yes. Mr. Hodge is here.

"The Court: How about Nichols, the tavern owner?

"Mr. Bates: Through some mix up he is not here. However, he is on his way.

"The Court: Are you ready for trial?

"Mr. Bates: We are ready for trial.

"The Court: All right.

"Mr. Stifler: Has the Court ruled on that?

"The Court: Just a minute. How about this defendant, Robert Leverenz? Is he here?

"Mr. Zimmerly: He is the one that is dismissed.

"The Court: You have agreed to dismiss as to him?

"Mr. Zimmerly: That's right.

"The Court: As I understand, that is a covenant not to sue.

"Mr. Zimmerly: That's right, your Honor.

\* \* \* \* \* \*

"The Court: Defendant, Robert Leverenz, is dismissed out of the case.

\* \* \* \* \* \*

"Mr. Stifler: If the Court please we would like to ask leave to withdraw on the part of William R. Nichols, insofar as he has failed to cooperate in the defense of this suit, he being a permissive user of the

truck in question, according to our viewpoint.

"Mr. Zimmerly: We certainly object to that, your Honor. There's been no real showing of any attempt to get in touch with this man; never tried to track him down among his friends and acquaintances at his usual haunts. Actually Mr. Stifler represents State Farm. It has agents and adjusters everywhere in the country. There is no showing that they have made an attempt to contact this man or tender the man expenses to come back here, which is a necessary pre-requisite to his co-operation.

"Mr. Stifler: Mr. Zimmerly, I think you have the wrong viewpoint. We have had no idea the man wouldn't appear here this morning. As a matter of fact, we have Mr. Hodge and Mr. Akers, the man riding with the defendant William Nichols, who lives in Iroquois County, both of them. They waited this morning until almost time for court to be here, thinking that he would appear and waited for him to come down this morning.

\* \* \* \* \* \*

"The Court: I can't accommodate you with a continuance, unless you will agree.

"Mr. Stifler: We are asking now to be allowed to withdraw.

"The Court: On the withdrawal part, that is a matter of contract, whether you have the legal right to withdraw. The court cannot consent for Mr. Nichols since he's had no notice of this, and therefore I couldn't permit you to withdraw at this time, so as to William R. Nichols the motion is denied.

"Mr. Stifler: All right.

"The Court: So far as the court is concerned, it is a legal proposition as to whether you can withdraw as attorney for him.

"We are all ready then to pick our jury. \* \* \*

\* \* \* \* \* \*

"The Court: You request the court not to state to the jury that you represent Mr. Nichols?

"Mr. Stifler: Yes, sir.

"The Court: And I will not do it.

"Mr. Stifler: Thank you.

"The Court: So I leave the legal proposition up to you.

"Mr. Stifler: That will come later, your Honor."

Whereupon counsel for State Farm withdrew from the case.

On the evening of October 20, Mr. Davenport, the same representative who had contacted Nichols before again saw Nichols in Big Stone Gap, and told him that it was necessary for him to go to the trial, and the Company would pay the expenses of the trip. Nichols consented to go and Davenport then made air reservations for Nichols to Danville, Illinois, leaving Tri-City Airport, Bristol, Virginia, which was 60 to 65 miles from Big Stone Gap. On October 21, 1958, at about 8:45 o'clock a. m. Davenport again telephoned Nichols and told him to meet him at the office of the Company's Attorneys in Gate City, Virginia, a distance of some 34 miles from Big Stone Gap, informing him of the plane reservation, and that the departure time was 11:30 o'clock a. m. The airport was a 30 mile drive from Gate City, Virginia. Nichols said he could obtain a ride from Big Stone Gap to Gate City, and meet him at the suggested place. Only one plane a day was available to reach Danville. Nichols arrived in Gate City between 11:00 o'clock a. m. and 12:00 o'clock noon, at the appointed place. He said he was delayed because of car trouble. It was too late to catch the plane. At the office of the Attorneys for the Company Nichols gave a statement of the facts and signed a non-waiver agreement which in effect allowed the Company to make a defense in the suit, but reserved to the Company its rights under the policy. Nichols

then returned home. The personal injury action proceeded through a portion of the morning of October 22, 1958, and the jury returned a verdict the same day. On October 24, 1958 the Attorney for State Farm informed Nichols by mail that due to his failure to attend the trial the Company did not appear for or defend him. The letter stated in part:

"Of course, you realize that the judgment against you in the amount of $18,500.00 is a personal liability on your part, and, while we feel that the judgment was brought about by your failure to appear when we know that you knew that you were supposed to be present, and had been told that it would jeopardize the position of Mr. Hodge's insurer if you failed to appear, we do feel that we should advise you that the disposition of the judgment, settlement and payment of the judgment is your problem."

Under the law of this State, in a garnishment proceeding, the plaintiff can not recover from the garnishee unless the insured, Nichols, could do so. Schneider v. Autoist Mutual Ins. Co., 1931, 346 Ill. 137, 139, 178 N.E. 466; Muthart for use of Zitnik v. Burik, 1945, 327 Ill.App. 170, 183–194, 63 N.E.2d 635. Before an insured is able to collect under a policy of insurance such as is present in this case, it is necessary that he comply with the provisions of the policy, including the co-operation clause. A clear statement of the law on this point was enunciated in the case of Allstate Ins. Co. v. Keller, 1958, 17 Ill.App.2d 44, 48–49, 149 N.E.2d 482, 484, 70 A.L.R.2d 1190, where the court said:

"A contract of automobile liability insurance is more than a simple agreement between two parties that the insurer will indemnify and defend the insured for losses incurred by him in the negligent operation of his automobile. It is a contract which protects both the insured and the public from the hazards of financial distress to which they may become victims as a result of engaging in traffic upon our streets and highways.

"When we consider the millions of vehicles operating on our highways, and the ever increasing number of accidents, it is apparent that a contract of insurance is of vital concern to all who own and operate such vehicles, to their passengers, and to all who venture forth as mere pedestrians. It is not just an agreement limited to the parties but by its very nature has become one cloaked with a public interest. Integrity should be the essence of the agreement. The cost of insurance is based upon the ratio of the claims paid to the risk written. * * * Compliance with its terms is therefore vital to all who may benefit, either directly or indirectly, from its provisions. For this reason we are of the opinion that strict compliance is in the best interest of the public * * *."

It was therefore necessary under the law of this State that Nichols fully comply with the terms and conditions of the policy of insurance. Until Nichols failed to appear at the trial he had complied with all requests the Company had made. It was stipulated at the pretrial conference that the Illinois law would be applicable.

The questions presented as to the breach of the policy are: (1) whether Nichols breached the co-operation clause by failing to appear at the trial; and (2) whether State Farm acted in good faith and gave reasonable and timely notice of the trial. Panczko for Use of Enright v. Eagle Indem. Co., 1952, 346 Ill.App. 144, 104 N.E.2d 645. These are questions of fact for the court to determine based upon the competent evidence. Panczko for Use of Enright v. Eagle Indem. Co., supra.

State Farm had the burden of proving non-co-operation on the part of Nichols. Gregory for Use of Cusimano v. Highway Ins. Co., 1960, 24 Ill.App.2d

285, 297, 164 N.E.2d 297. State Farm has sustained this burden. This court finds from a preponderance of all the competent evidence that Nichols never intended to come back to Danville for the trial of the Pawlik case. He first gave the excuse that his wife was about to have a baby. The child was born November 26, 1958, and the trial was October 20. The Company was entitled to have him present and testify in defense of the action. The plaintiff on the other hand has not shown that there was any reasonable excuse for Nichols not appearing at the trial as he was instructed to do. Muthart for use of Zitnik v. Burik, supra.

■ The proof is conclusive that State Farm acted in good faith in carrying out the terms of its contract. The Company informed Nichols considerably before the time of the trial as to the date, time and place of trial, and requested his presence at the Danville Attorney's office so that they could discuss the case more fully before trial. Nichols gave no indication to the Company that he would not appear at the trial and never requested that the Company send him any money which he might need in order to make the trip. Nichols had been told that the Insurance Company would pay for his expenses to the trial. He was also given the card of an agent of the insurer so that he could contact him for any reason whatsoever. He had previously made two trips to Danville for the criminal case, at his own expense. Had Nichols any reasonable excuse for not attending the trial, it would have been a simple matter for him to contact the Danville Attorney or Mr. Davenport, as he was told he should do, and inform them of any complication. While Nichols was not a man of means he certainly could have written a letter which required but four cents postage to either the Attorney or Mr. Davenport. He had ample time to do this.

On the date of the trial the Insurer's Attorney was justified in withdrawing from the case as defendant's counsel. Had he not done so he would have waived the defense of non-co-operation, and the Company would have been held liable, although they were without fault. Panczko for Use of Enright v. Eagle Indem. Co., supra. See Snyder for Use of Brooks v. United States Mut. Ins. Co., 1941, 312 Ill.App. 337, 38 N.E.2d 540. Also see Pennsylvania Casualty Co. v. Miller, 7 Cir., 1944, 145 F.2d 292.

Furthermore, State Farm, in compliance with the insurance contract settled two claims against Nichols with two other occupants of the car that collided with the truck Nichols was driving. The total amount paid was $7,960.

■■ The insurer had no duty after he failed to appear to arrange for Nichols to come to the trial since the insured had breached the co-operation clause by his actions. They still attempted to protect his interest by trying to insure his appearance at the trial in time to offer testimony. They arranged for him to fly to Danville the next day. Although Nichols had plenty of time to get to Gate City and meet with Mr. Davenport he failed to appear in time to catch the plane. He claimed the delay was due to car trouble. State Farm did take a non-waiver agreement which it was entitled to do under the circumstances in order to save its rights under the policy if its Attorney re-entered the case.

■ There is the further question in the case as to whether the plaintiff should be entitled to recover under the endorsement to the State Farm policy. Attached to the policy is a rider entitled "Endorsement for Motor Carriers Policies for Bodily Injury Liability and Property Damage Liability under Section 16 of the Illinois Truck Act." Ill.Rev.Stat., 1953, Motor Vehicles, Ch. 95½, § 253. Under the Illinois Truck Act supervision of the Act was in the Department of Public Works and Buildings, and the policy of insurance was required to be filed with this Department. Ill.Rev.Stat., 1953, Motor Vehicles, Ch. 95½, §§ 241 and 253. The entire Truck Act was repealed by the Act of the Illinois Legislature approved July 7, 1953. Ill.Rev.Stat., 1959, Motor Vehicles, Ch. 95½, page 765. The

repeal of the Truck Act did not cancel the provisions in the endorsement. See Hanover Fire Ins. Co. v. Dallavo, 6 Cir., 1921, 274 F. 258, 266. The endorsement specifically states:

"This endorsement expires with the policy and may not be cancelled without cancellation of the policy to which it is attached."

State Farm produced the instant policy with the endorsement and this policy was in force at the time of the collision in question.

State Farm urges that it could not cancel the policy as provided in the endorsement. The endorsement stated:

"Such cancellation *may* be effected by the Company or the Insured giving thirty (30) days' written notice thereof to the Department of Public Works and Buildings, Division of Motor Carriers, at Springfield, Illinois * * *." (Emphasis supplied.)

Division of Motor Carriers of the Department of Public Works and Buildings was abolished when the Act was repealed, but State Farm could have canceled the endorsement by notice to the insured and issued a new policy. The policy ran from year to year. So far as the record shows Hodge, the insured, paid the same premium and State Farm accepted it on the same policy with the endorsement included.

 The plaintiff in the instant action would be entitled to recover under the endorsement although the co-operation clause was breached. The endorsement stated:

"Nothing contained in the policy * * * nor the violation of any of the provisions of the policy * * * by the Insured, shall relieve the Company from Liability hereunder or from the payment of any such final judgment."

Therefore, the breach of the provisions of the policy does not affect the right of the plaintiff to recover under this endorsement.

State Farm's liability is limited by the endorsement of the policy to $10,000 "in any one accident." State Farm has paid $7,960 on account of this accident, leaving a balance of $2,040, which the plaintiff may recover from this garnishment action.

Findings of fact, conclusions of law and final order in accordance with this opinion may be submitted for approval of this Court.